**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**KEY WEST DIVISION**

Civil Action Number:

JUAN CARLOS GIL,

      Plaintiff,

vs.

KEYS HOTEL OPERATOR, INC.
d/b/a Hawks Cay Resort and
www.hawkscay.com,

      Defendant.

---

## COMPLAINT

---

      COMES NOW Plaintiff Juan Carlos Gil ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Keys Hotel Operator, Inc. for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and pursuant to the common law tort of trespass and alleges as follows:

### INTRODUCTORY STATEMENT

      1.     Plaintiff brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Keys Hotel Operator, Inc.'s business.

2. Businesses can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective **Zones of Discrimination** and exclude the visually-impaired.

3. When business owners do not take steps necessary to notice people of their businesses limitations to provide auxiliary aids and services, they are not only marginalizing the visually impaired community, but they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, i.e.: second-class citizens.

4. This case arises out of the fact that Defendant Keys Hotel Operator, Inc. has operated its business in a manner and way that completely excludes individuals who are visually impaired from access to Defendant's business based upon Defendant's failure to provide auxiliary aids and services for effective communications.

5. Defendant Keys Hotel Operator, Inc. (also referenced as "Defendant") owns and operates a place of public accommodation which is an upscale specialty hotel under the brand name "Hawks Cay Resort." The Hawks Cay Resort offers hotel rooms and suites to the general public and the Hawks Cay Resort also includes many resort amenities such as restaurants, bars, a spa, salon, fitness center, pools/lagoon, pool-side cabanas, a marina, dockside store, Island Time Gift Shop, and a variety of activity-based centers and programs on-site such as Hawks Cay fishing charters, Dolphin Connection (dolphin interaction program), Florida Keys Dive Center (which hosts dive trips and scuba certification programs), Sundance Watersports (which hosts gear/boat rentals, tours, and short day-trips), oTHErside kite boarding (for lessons and boat trips), the "Cliff Drysdale" Tennis program, and Coral Cay Activities and Adventure (which hosts Camp

Hawk for children), all which goods and services are heretofore, referenced as "goods and services."

6.     This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business (which includes Defendant's Website) so that Plaintiff (and other individuals who are visually impaired) can access and communicate with Defendant effectively and timely such that their access to Defendant's place of public accommodation (which is the Hawks Cay Resort) are not impeded; as such impediment has rendered Defendant's physical place of accommodation not fully accessible to the visually impaired.

7.     This complaint also seeks compensatory damages to compensate Plaintiff for having been subjected to unlawful discrimination by Defendant as a result thereof.

## JURISDICTION & VENUE

8.     This is an action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's business.

9.     This is also an action with supplemental jurisdiction over related state law claim pursuant to 28 U.S.C. §1367.

10.     State law provides for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal

computer). Remedies provided under common law for trespass are not exclusive, and may be sought connection with suits brought under the ADA.

11.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, the Defendant's hotel is located in the district. In addition, the Defendant is authorized to conduct business within the state of Florida as a foreign profit corporation.

12.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

**Juan Carlos Gil**

13.     Plaintiff Juan Carlos Gil (also referenced as "Plaintiff") is a resident of the state of Florida and is *sui juris*, is disabled as defined by the ADA and the Rehabilitation Act.

14.     Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff suffers optic nerve damage; as such, he is legally blind. Further, Juan Carlos Gil suffers from cerebral palsy, is unable to walk and is confined to a wheelchair.  Therefore, Plaintiff is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

15.     Plaintiff is an athlete who travels for his athletic triathlon endeavors, and also is an advocate for the rights of blind and wheelchair bound disabled individuals (like

himself).    In the past year, Plaintiff has traveled to Arizona, Orlando, and Boston to attend various conventions and meetings to advance the rights of the disabled. Such events include, but are not limited to, the National Federation for the Blind convention in Orlando[1], the American Counsel for the Blind convention in Nevada, and various focus groups and meetings throughout the east coast (including New York and Boston).

16.    Plaintiff cannot use the computer/internet without the assistance of commercially available screen reader software to interface with the internet and websites located therein.

**Keys Hotel Operator, Inc.**

17.    Defendant Keys Hotel Operator, Inc. (also referenced as Defendant) is the owner and operator of a hotel under the brand name "Hawks Cay Resort."

18.    The Defendant Keys Hotel Operator, Inc. is an operator of hotels. Defendant owns and operates the tropical upscale Hawks Cay Resort located in Duck Key Florida. The Defendant also maintains various amenities at the resort including (but not limited to) restaurants, bars, a spa, salon, fitness center, pools/lagoon, pool-side cabanas, marina, shops, and a variety of activity-based centers and programs on the premises, which hotel guests and the general public can patronize. Defendant's hotel location can be accessed through its website.

## FACTS

19.    Plaintiff's disability limits major life activities, and he requires assistive technologies, auxiliary aids and services for effective communication.

---

[1] July 2017

20.     At all times material hereto, Defendant Keys Hotel Operator, Inc. was (and is) an organization which owns and operates a resort hotel under the brand name "Hawks Cay Resort," which is open to the public. As the owner and operator of the hotel, Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant Keys Hotel Operator, Inc. is a private entity which owns and/or operates "[A]n inn, hotel, motel, or other place of lodging," 42 U.S.C. §12181(7)(A) and 28 C.F.R. §36.104(2).

21.     Since Defendant's Hawks Cay Resort is open to the public, the hotel is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(A) and 28 C.F.R. Part 36. Defendant's Hawks Cay Resort are also referenced throughout as "Place(s) of Public Accommodation," "Hawks Cay Resort."

22.     Defendant's hotel also contains restaurants such as Alma Restaurant, Angler and Ale, Ocean Restaurant, Tiki Grill, Beach Grill, Coral Grill, Puglisi's Pizza, Dockside Snack Shop and other outlets for cocktails and coffee such as the Tiki Bar and Island Time Coffee, which are all places of public accommodation as defined as "[A] restaurant, bar, or other establishment serving food or drink," pursuant to 42 U.S.C. §12181(7)(B).

23.     Defendant's hotel also contains the Island Time Gift Shop and Hawks Cay Dockside Store which are both places of public accommodation as defined as: "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," pursuant to 42 U.S.C. §12181(7)(E).

24. Defendant's hotel also contains a spa, fitness center, and salon which are places of public accommodation as defined as 42 U.S.C. §12181(7) (L) & (F).

25. Defendant's hotel offers many activity based activities such as Hawks Cay fishing charters, the Dolphin Connection, the Florida Keys Dive Center, Sundance Watersports, kite boarding lessons and boat trips, a tennis program, and an activity center for children. All of these activities are places of public accommodation as defined as "other places of recreation" pursuant to 42 U.S.C. §12181(7)(I).

26. The Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.hawkscay.com ("Website").

27. Defendant's Website is an electronic storefront and business which permits the public to obtain information on Hawks Cay Resort rooms and suites and regarding Hawks Cay Resort goods and services as offered through the restaurants, bars, retail shops, spa, fitness center, salon, and various places of recreation on the Hawks Cay Resort premises, information on Hawks Cay Resort policies, and the ability to reserve a hotel room online, and other information the Defendant seeks to communicate to the public. From the Website, the public can learn about all the various amenities at the Hawks Cay Resort. In addition from the Website the public can schedule a reservation at one of the on-property restaurants,  reserve event/meeting venues, view daily special programs/events, view/reserve discounted vacation packages, and sign up to receive special offers. Through its business model (which includes its Website), Defendant is statutorily required to provide auxiliary aids and services for the disabled.

28.     Defendant's Website is an integral part of Defendant's hotel that is online, where the public can view Defendant's hotel facilities and also reserve Hawks Cay Resort rooms.  Therefore, the Website is itself a public lodging establishment which is a Place of Public Accommodation pursuant to 42 U.S.C. §12181(7)(A).  As such, the Website must comply with all requirements of the ADA.

29.     Defendant's Website is an integral part of Defendant's restaurants and bars that are online, where the public can view restaurant and bar hours of operation, menu selections and make reservations for the restaurants online. Thus the Website is also a Place of Public Accommodation pursuant to 42 U.S.C. § 12181(7) (B).

30.     Defendant's Website is an integral part of Defendant's spa, fitness center, and salon that are online, where the public can view spa, fitness center, and salon menu of services, personalized boot camps, and equipment. Thus the Website is also a Place of Public Accommodation pursuant to 42 U.S.C. §§s 12181(7)(F) & (L).

31.     Defendant's Website is an integral part of Defendant's retail stores, whose information are online[2], where the public can view dockside store hours, as well as lists of grocery items and boating items that are in-stock; therefore the Website a sales establishment which is a Place of Public Accommodation pursuant to 42 U.S.C. §§s 12181(7)(E).

32.     Defendant's Website is an integral part of the activities offered at Defendant's resort, where the public can learn about the various activities, reserve a pool-side cabana, book a dolphin interaction or watersport tour, find a fishing charter, and learn about and reserve spots for other activities (tennis, kite boarding, etc.).  Therefore,

---

[2] Through the hyperlink https://www.hawkscay.com/amenities/marina/hawks-cay-marina-dockside-store

an "other place of recreation," which is a Place of Public Accommodation pursuant to 42 U.S.C. §§s 12181(7)(I).

33.     For all of the reasons as delineated herein, clearly, the Website is an integral part of all of the goods and services offered to the public by Defendant. By this nexus, the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §§s 12181(7)(A), (B), (E) (F), (L), & (I) of the ADA[3].

34.     If the Defendant offers a Website, the Defendant must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the services afforded to the public.

35.     At all times material hereto, Defendant Keys Hotel Operator, Inc. was (and is) an organization owning and operating the Website. Since the Website is open through the internet to the public as part of their Place of Public Accommodation, Defendant (as the owner and/or operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §§s 12181(7)(A), (B), (E), (F), (L), & (I), & (I) and 28 C.F.R. §36.104(2).  As such, Defendant has subjected itself and the Website it has created and maintains, to the Americans with Disabilities Act ("ADA").[4]

---

[3] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice  - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

[4] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." (See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before

36.     Plaintiff is a customer who is interested in renting a hotel room for an upcoming vacation at the Defendant's Hawks Cay Resort located at 61 Hawks Cay Boulevard, Duck Key Florida and is also interested in dining at Defendant's on-site restaurants and bars, as well as receiving spa treatments located at the hotel and enjoying the many watersport activities offered at the hotel.

37.     Plaintiff had called the Defendant's Hawks Cay Resort to inquire about the amenities at the hotel, the restaurants (menus and locations therein), spa services, and watersport activities available at the hotel. Defendant's representative failed to fully assist Plaintiff and referred Plaintiff to its Website.

38.     During the month of July 2017, Plaintiff attempted on several occasions to utilize Defendant's Website to educate himself as to the Hawks Cay Resort amenities and goods and services available with the intent then patronizing the Hawks Cay Resort.

39.     The Plaintiff utilizes JAWS Screen Reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are visually impaired to communicate with internet website(s).

40.     Defendant's Website lacks accommodations necessary to allow visually impaired individuals who use screen reader software access to the Website, prompting information to locate and accurately fill-out online forms in order to reserve a hotel room or vacation package at the Hawks Cay Resort, to make a reservation at one of the many restaurants located therein, browse through Hawks Cay Resort goods and services for the purposes of purchasing Hawks Cay Resort goods and services, to reserve space for one of

---

the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

the many activities offered (such as pool-side cabanas[5], dolphin interaction, watersport tour, and/or a fishing charter), sign up for special offers, or schedule an event/meeting space, all for the purposes of patronizing Defendant's business.

41.     The Plaintiff attempted to locate an **Accessibility Notice**[6] which would direct him to a webpage with contact information for disabled individuals who have questions, concerns or who are having difficulties communicating with the Defendant.

42.     The fact that Plaintiff could not communicate with Defendant left him excluded from accessing Defendant's physical hotel location, and left Plaintiff with the feeling of segregation, rejection, and isolation, as Plaintiff was unable to participate in the same manner as provided to the public.

43.     The Plaintiff's inability to access and use accessible auxiliary aids and services has impaired, obstructed, hindered, and impeded Plaintiff's ability to enjoy the full resort experience (goods and services) offered by Defendant's business at Defendant's location. Plaintiff's inability to enjoy and learn about Defendant's amenities, accommodations, goods and services has resulted in a *virtual barrier* which has precluded Plaintiff's enjoyment of and access to Defendant's amenities, accommodations, goods and services. Plaintiff's inability to enjoy Defendant's amenities, accommodations, goods and services prior to entering Defendant's hotel has hindered, impeded and inhibited Plaintiff's entry to Defendant's hotel. Plaintiff has missed out on purchasing and enjoying Defendant's goods and services. Plaintiff has suffered

---

[5] Hyperlink https://www.hawkscay.com/amenities/cabana-connection

[6] **hyperlink**, or simply a link, is a reference to data that the reader can directly follow either by clicking, tapping, or hovering. A **hyperlink** points to a whole document or to a specific element within a document.

particularized harm and an injury in fact.  It is because Plaintiff cannot communicate with Defendant that Plaintiff has not had access to Defendant's hotel.

44.     Plaintiff continues to desire to patronize Defendant, but is unable to do so, as he is unable to effectively communicate with the Defendant in order to obtain access to Defendant's physical hotel location in order to participate in the goods and services offered at Defendant's Hawks Cay Resort. Plaintiff's inability to communicate with/comprehend Defendant's business effectively has impeded Plaintiff's ability to patronize Defendant's hotel physical location.  As such, the Plaintiff (and others with vision impairments) will suffer continuous and ongoing harm from the Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

45.     On information and belief, Defendant has not initiated an ADA policy for effective communication to insure full and equal use of their business by individuals with disabilities.

46.     On information and belief, Defendant has not instituted an Effective Communications Committee to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

47.     On information and belief, Defendant has not designated an employee as an Accessibility Coordinator to insure full and equal use of its Auxiliary Aids and Services by individuals with disabilities.

48.     On information and belief, Defendant has not instituted an Auxiliary Aids and Services Accessibility User Testing Group to insure full and equal use of the Defendant's Auxiliary Aids and Services by individuals with disabilities.

49.      On information and belief, Defendant has not instituted an Automated Accessibility Testing program.

50.      On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

51.      On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have the www.hawkscay.com website, Applications, and Digital Assets accessible to the visually impaired community.

52.      On information and belief, Defendant's Auxiliary Aids and Services do not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility[7].

53.      On information and belief, Defendant does not have an Axillary Aids and Services Accessibility Policy.

54.      On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its Axillary Aids and Services.

55.      On information and belief, Defendant has not offered any other credible from of Auxiliary Aids and Services other than its Website.

56.      Thus, the Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its business.

---

[7] developed by the Web Accessibility Initiative (WAI) working group of the World Wide Web Consortium which defined how to make Web content more accessible to people with disabilities (W3C)

57.     All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

58.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites, such as the www.hawkscay.com website.[8]

59.     On information and belief, the Defendant is aware of the common access barriers and barriers to effective communication within its Auxiliary Aids and Services which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

60.     On information and belief, Defendant is aware of need to provide full access to all visitors to its www.hawkscay.com website.[9]

61.     Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired.

62.     Such barriers result in punishment and isolation of blind and low vision individuals from the rest of society.

---

[8] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

[9] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (https://www.digitalcommerce360.com/2016/04/01/web-accessibility-what-e-retailers-need-know/), (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance )

63.     According to the National Federation for the Blind[10], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 469,300 individuals with visual disabilities living within the state of Florida[11].

64.     According to Statistic Brain Research Institute[12], in 2014, online sales in the United States exceeded $304 Billion U.S. Dollars. On average, 87% of Americans that have browsed online stores and/or hotel websites such as www.hawkscay.com and have made an internet purchase or made a reservation online, while 57% of Americans that have browsed online stores and/or hotel websites have made a purchase or made a reservation online multiple times.

65.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices. No price can be put on Plaintiff's inability to shop for himself.

66.     Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of Plaintiff's rights is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

67.     Plaintiff has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

---

[10] Statistics for 2015, see  https://nfb.org/blindness-statistics
[11] 469,300 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2014; see https://nfb.org/blindness-statistics
[12] US Commerce Department, Forrester Research date: October 9, 2014, See http://www.statisticbrain.com/total-online-sales/

**Trespass Violations**

68.     Plaintiff utilizes his personal computer to access websites such as the Defendant's www.hawkscay.com website. Plaintiff uses his personal computer as a method of conveyance of his personal information. As such, Plaintiff stores his personal information and retains his browsing history on his personal computer.

69.     Throughout the Website, the Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits.

70.     The Defendant informs the Website user that the user's personal information and browsing history is collected and used for targeted marketing and advertising. Further, Defendant discloses that any individual who accesses its website and commences to shop on that website is subject to having his/her personal information conveyed to third parties. According to the Defendant's Website, those third parties include (but may not be limited to): (i) the Defendant's business partners (without so naming those business partners other than stating that some of those business partners include advertisers), (ii) their advertisers (without so naming their advertisers), (iii) ad serving companies (without so naming the ad serving companies), (iv) promotions users (without so naming the promotions users), (v) to law enforcement officials (if so required to be transmitted by said law enforcement), and (vi) other third parties (if they determine that the information will be used in a responsible manner by the third party).

71.     The Plaintiff was unable to comprehend Defendant's Website; therefore, Plaintiff has/had no choice (and therefore no knowledge) of the Defendant's installation

of software and collection of the website user's browsing history and analytics placed on the user's computer.

72.     Based upon the review of Defendant's Website, it is clear that, when a user accesses Defendant's Website, the Defendant installs software onto the user's computer. It is clear that the Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.  The mining of the user's data is based on Defendant's use browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

73.     As such, through its Website, Defendant has committed a trespass against the Plaintiff since the Website places software on the Plaintiff's personal computer without Plaintiff's consent.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

74.     Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1-67 above.

## Requirement for Effective Communication

75.     It is irrefutable that the ADA and implementation of ADAAG requires that Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

76.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems."  28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

17

77.     Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

78.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

79.     Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

80.     By virtue of the fact that Defendant's Hawks Cay Resort is open to the public, its hotel is place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §12181(7)(A).

81.     Further, by virtue of the fact that Defendant's Hawks Cay Resort contains restaurants, bars, a spa, salon, fitness center, pools/lagoon, pool-side cabanas, marina, shops, and activity-based programs (fishing charters, dolphin interaction program, scuba dive center (dive trips and certification programs), watersports (boat rentals, tours, and day-trips),  kite boarding, tennis and children's activities camp, which are open to the

public, its hotel is a place of public accommodation subject to the requirements of Title III of the ADA; 42 U.S.C. §§s 12181(7)(B), (E), (F), (L), & (I).

82.     The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

83.     The virtual barrier to access is just as real as a physical barrier to access, for without information as to the amenities, accommodations, and goods and services offered and ability to investigate and choose the hotel, the visually impaired have no access to the amenities, accommodations, goods and services of that hotel, which is a Place of Public Accommodation.

**The Website As A Place of Public Accommodation**

84.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[13]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

85.     District courts within the Eleventh Circuit that have considered the question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website

---

[13] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

and the physical premises of a public accommodation. See, *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Andres Gomez v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

86.     The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

87.     Consistent with the text and legislative history of the ADA, the Department of Justice (Department) has long affirmed the application of Title III of the ADA to websites of public accommodations[14]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #23].

88.     The Website serves as an integral part of Defendant's Hawks Cay Resort by providing the public information on the Hawks Cay Resort, and offers the public the

---

[14] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

ability to reserve a room at the Hawks Cay Resort. The Website also provides the public the ability to make a reservation for dining at the various restaurants, reserve a pool-side cabana, reserve a dolphin interaction or watersport tour, find a fishing charter, view spa/salon services, view fitness center services and boot camp programs, to reserve event space (meetings/weddings), to learn about the retail shop goods, pools/lagoon, marina, and to learn about activity-based programs (scuba dive center (dive trips and certification programs), kite boarding, tennis, and children's activities camp. These features of the Website provide the public the ability to determine if they wish to physically patronize the Defendant's physical hotel location. This nexus causes the Website to be subject to the ADA under 42 U.S.C. §§s 12181(7)(A), (B), (E), (F), (L), & (I).

89.     In addition, Defendant's representatives within its hotel location have referred customers to Defendant's Website for  information on the various activities offered at Hawks Cay Resort such that the Website is an integral part of the public's needs with respect to Defendant's business, and nexus to the hotel as a *Place of Public Accommodation* under is clearly established.

90.     As delineated above and pursuant to 42 U.S.C. §§s 12181(7)(A), (B), (E), (F), (L), & (I), Defendant is a *Public Accommodation* under the ADA because it owns and/or operates the www.hawkscay.com website, as defined within §§s 12181(7)(A), (B), (E), (F), (L), & (I). On this basis, Defendant is subject to the ADA.

91.     By Defendant's representatives referring the public /visually impaired individuals to its Website for reference to information on amenities, accommodations, and goods and services instead of providing such information at the physical hotel location, the Website has been rendered an integral part of Defendant's physical business

location. Thus, the failure of that Website to be accessible to visually impaired individuals impedes visually impaired individuals (such as the Plaintiff) from fully accessing the Defendant's physical business location.

92. It is clear that the ADA applies to the Defendant's Website, as the Website **is** a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

93. The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v. Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[15] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc*., 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[16] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where

---

[15] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

[16] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

94.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

95.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

96.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

**Barriers to Access**

97.     As a result of the inaccessibility of Defendant's physical places of

business precipitated by barriers within its Website, visually impaired individuals are denied full and equal access to Hawks Cay Resort physical location as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

98.    Types of website programming errors include (but are not limited to) *(i)* *Programming Error Types* ("PETs"), which are easily identifiable and correctable,  *(ii)* *Programing Alert Error Types* ("PATs"), which are prone to making the website inaccessible, and *(iii)* Design Errors ( DE's)  that create empty headings and text fields that create confusion for a user that rely on the 'TAB' key to navigate a web page.

99.    A sampling review of just part of the Defendant's Website revealed that the Website is not functional for users who are visually impaired.  The Website contains several types of PETs (easily identifiable and correctable), which occur throughout the Website such as:

1) The language of the document is not identified,
2) Image alternative text is not present, and
3) A form control does not have a corresponding label.

100.    Further, the Defendant's Website contains various types of PATs (prone to making the website inaccessible), which occur throughout the Website, such as:

1) Alternative text is likely insufficient or contains extraneous information,
2) An event handler is present that may not be accessible,
3) A heading level is skipped,
4) Flash content is present,
5) Adjacent links go to the same URL,
6) A link contains no text, and
7) Alternative text is likely insufficient or contains extraneous information.

101.    More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

102.    Defendant's website contains one or more links to a PDF attachment.  For example, at https://www.hawkscay.com/sites/default/files/pdfs/heroes-wedding-promo.pdf a PDF attachment is provided to give the public information about wedding events at the Hawks Cay Resort Hotel. In all cases where PDF attachments are provided within the Website, the PDF attachment's flat surface does not contain accessible coding. The PDF document does not include a text-based format (or equivalent). Defendant has not added 'alt[17]' tags or long descriptions for the PDF within its website. The PDF attachment has not been provided in HTML or with a text equivalent, and is not a webpage[18], therefore, it is inaccessible to the visually impaired.

103.    Further, the Website does not offer include the universal symbol for the disabled[19] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

104.    There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic Auxiliary Aids and Services components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

---

[17] 'alt' refers to 'alternative text'

[18] (which is an internet document usually in HTML)

[19]  , or HTML "Accessibility" link for those individuals who are visually impaired

105.     The Defendant has violated the ADA (and continues to violate the ADA) by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's Auxiliary Aids and Services. These violations within Defendant's Website are ongoing.

**Violations of the ADA**

106.     As a result of the inadequate development and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

107.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Juan Carlos Gil injunctive relief; including an order to:

a)  Require Defendant to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.hawkscay.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b)  Require Defendant to take the necessary steps to make the Website  readily accessible to and usable by visually impaired users, and during that time period prior to the www.hawkscay.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the Website for purposes of viewing and locating the Hawks Cay Resort, making reservations for renting a room at Hawks Cay Resort, making reservations for dining at the on-site restaurants within Defendant's hotel, making reservations for spa services at on-site spa/salon, booking a pool-side cabana, reserving a dolphin interaction or watersports tour, and/or finding a fishing charter at the Hawks Cay Resort online. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from purchasing such goods and services made available to the public through Defendant's Website and through Defendant's physical hotel location.

108.    Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action.  Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Keys Hotel Operator, Inc.

## COUNT II – TRESPASS

109.    Plaintiff Juan Carlos Gil re-alleges and incorporates by reference the allegations set forth in ¶¶s 1–73 above.

110.    Plaintiff's tangible personal property, being his computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's www.hawkscay.com website.  Plaintiff's personal information has suffered a trespass due to the employment

of software analytics by Defendant which are present on Defendant's Website, which the Plaintiff has navigated.

111.    Plaintiff was unaware that Defendant's Website was placing software on his computer due to his inability to effectively communicate with Defendant's Website.

112.    Plaintiff did not consent to the placement of software on his personal computer; therefore Defendant has committed a trespass against Plaintiff.

113.    By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of the Plaintiff's personal property in violation of the common law.

114.    Defendant's installation, operation, and execution of software on Plaintiff's computer has impaired the condition and value of the Plaintiff's computer.

115.    At Defendant's Website location (https://www.hawkscay.com/privacy-policy), Defendant states the following:

**Privacy Policy**

"Similar to other commercial Web sites, our Web site utilizes a standard technology called "cookies" (see explanation below, "What Are Cookies?") and Web server logs to collect information about how our Web site is used. Information gathered through cookies and Web server logs may include the date and time of visits, the pages viewed, time spent at our Web site, and the Web sites visited just before and just after our Web site. We, our advertisers and ad serving companies may also use small technology or pieces of code to determine which advertisements and promotions users have seen and how users responded to them."

116.    As a direct and proximate result of Defendant's trespass to chattels, nuisance, and interference and unauthorized access of and intermeddling with the Plaintiff's property, the Defendant has injured and impaired on the condition and value of the Plaintiff's computer as follows:

a) By consuming the resources of an/or degrading the performance of Plaintiff's computer (including space, memory, processing cycles and internet connectivity);

b) By infringing on Plaintiff's right to exclude others from his computer;

c) By infringing on Plaintiffs right to determine (as owner of his computer) which programs should be installed and operated on his computer;

d) By compromising the integrity, security, and ownership of Plaintiff's computer; and

e) By forcing the Plaintiff to expend money time, and resources in order to remove the programs installed on his computer without notice or consent.

117.    For all of the foregoing, the Plaintiff has no adequate remedy at law.

## **DEMAND FOR RELIEF**

**WHEREFORE,** Plaintiff Juan Carlos Gil hereby demands judgment against Defendant Keys Hotel Operator, Inc. and requests the following injunctive and declaratory relief:

a) The Court issue a declaratory judgment that Defendant has violated the Plaintiff's rights as guaranteed by the ADA;

b) The Court enter an Order requiring Defendant to update its www.hawkscay.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[20] within its Website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.hawkscay.com website;

d) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

e) The Court enter an order requiring Defendants to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

f) The Court enter an Order directing Defendants to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendants to undertake and complete corrective procedures to the Website;

---

[20] 

g) The Court enter an Order directing Defendants to establish a policy of web accessibility and accessibility features for the Website to insure effective communication for individuals who are visually impaired;

h) The Court to declare that Defendant's actions, as set forth above, violate the Florida common law tort of trespass as alleged above in that the Website has placed unwarranted and unauthorized software on Plaintiff's computer without his consent;

i) The Court to award injunctive and equitable relief as applicable, including:

    i. prohibiting Defendant from engaging in the acts alleged above;

    ii. requiring Defendant to provide effective communication to users of its Website such that individuals who are visually impaired have knowledge and notice of Defendant's placement of software on their computer(s); and

    iii. requiring Defendant to provide Plaintiff reasonable means to decline participation in Defendant's placement of software on his computer;

j) The Court award damages in an amount to be determined at trial;

k) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees;

l) As to the count of trespass, the Court to award Plaintiff other equitable relief as the Court deems proper; compensatory damages sustained by Plaintiff; and permanent injunctive relief prohibiting Defendant from

engaging in the conduct and practices of trespass as complained of herein; and

m) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 18th day of July, 2017.

Respectfully submitted,

_s/Scott Dinin_
Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
_Counsel for Plaintiff_